UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIONELL PAYNE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15 C 5970 |
| | ) | |
| UNITED STATES MARSHALS SERVICE and GENERAL SERVICES ADMINISTRATION, | ) ) ) ) | Judge Kocoras |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**Introduction**

Plaintiff Dionell Payne is a state prisoner who sued the federal government, claiming that he was denied accommodation in facilities while at the federal courthouse in Chicago for a civil trial. After its initial screening of the complaint, this court determined that only the claim under the Rehabilitation Act, 29 U.S.C. § 794, against the United States Marshals Service ("USMS") and the General Services Administration (collectively, "defendants") survived. Dkt. 5. The court should now dismiss the case because defendants are voluntarily renovating their facilities and have changed their policies to better accommodate prisoners in oversized wheelchairs, rendering this lawsuit moot. However, even without these voluntary changes, Payne cannot prevail. The court should grant summary judgment for defendants because Payne did not exhaust the required administrative process before bringing this Rehabilitation Act claim and because the Rehabilitation Act either does not apply to the portions of the Dirksen Federal Building at issue or those areas are being brought into voluntary compliance.

**Facts**

**A. Payne's Visit to the Federal Courthouse in November 2014**

Payne is paralyzed and requires a wheelchair for mobility. Defendants' Rule 56.1 Statement of Material Facts ("DSF") ¶ 1. In November 2014, Payne was being held in custody at the Cook County Jail. DSF ¶ 2. The Cook County Sheriff's Department transported Payne to the federal courthouse at 219 South Dearborn Street in Chicago on several days between November 10 and November 14, 2014.[1] DSF ¶¶ 3–5. Payne was transported to the federal courthouse to attend his civil trial before Judge Kennelly, *Payne v. Maher, et al.*, (No. 11 C 6623). DSF ¶ 6. The Cook County Sheriff transported Payne in a medical van to accommodate his wheelchair. DSF ¶ 7.

When the Cook County Sheriff van transporting Payne arrived in the basement parking level of the federal courthouse, a USMS deputy met it near the dedicated prisoner elevator. DSF ¶ 8. After Payne exited the Cook County Sheriff van, two Cook County Sheriff personnel and one USMS deputy then escorted Payne along a flat hallway to the dedicated prisoner elevator. DSF ¶ 9.

The Cook County Sheriff personnel remained with Payne throughout his time in the federal courthouse. DSF ¶ 10. If a prisoner is coming from a non-federal entity, USMS does not take custody of that prisoner—rather, it offers its facilities as a courtesy to the non-federal entity. DSF ¶ 11.

It was determined after attempting to wheel Payne into the prisoner elevator that the wheelchair would not fit. DSF ¶ 12. Payne assisted the USMS deputy in removing the footrests

---

[1] The exact dates of Payne's visit to the federal courthouse are immaterial and not in dispute for the purposes of this motion. November 11, 2014 was Veterans' Day, a federal holiday.

from his wheelchair. DSF ¶ 13. Payne was then wheeled into the elevator and rode to the 24th floor lock-up with the USMS deputy and two Cook County Sheriff personnel. DSF ¶ 14.

Once on the 24th floor, Payne was placed in holding cell number eight, a large cell with benches along one wall, a toilet, sink, and privacy screen. DSF ¶ 15. Payne states that he was not able to use the facilities unassisted because there were no grab bars in the toilet area. DSF ¶ 16. Payne further states that he fell to the floor, but was able to return to his wheelchair and change his clothes for his trial, but with difficulty. DSF ¶ 17.

Payne was transferred via the dedicated prisoner elevator to Judge Kennelly's courtroom. DSF ¶ 18. Again, the footrests of his wheelchair were removed by USMS personnel to fit the wheelchair into the elevator. DSF ¶ 19. During the trial, Payne either remained in the courtroom or in the holding cell adjacent to Judge Kennelly's courtroom. DSF ¶ 20. That holding cell did not have grab bars around the toilet facilities. DSF ¶ 21. At the end of the day, Payne was transported back to the 24th floor via the dedicated prisoner elevator to holding cell eight, then back to the basement parking level via the dedicated prisoner elevator, where he boarded the Cook County Sheriff van to return to Cook County Jail. DSF ¶ 22.

Substantially the same course of events happened every day that Payne was in the federal courthouse. DSF ¶ 23. Payne had never been to the federal courthouse before November 2014 and has not been back since. DSF ¶ 24.

**B. Prisoner Areas in the Dirksen Federal Building**

Construction on the Dirksen federal building was completed in 1964. DSF ¶ 25.

In 1998, GSA upgraded the components (i.e., the electronics and cabs) of the dedicated prisoner elevators. DSF ¶ 26. Structural changes to the concrete elevator shafts and modifications to the size of the prisoner elevators were not undertaken at that or any other time. DSF ¶ 27.

The courtroom holding cells, including the holding cell adjacent to Judge Kennelly's courtroom, have not been altered in any way since the building was completed in 1964. DSF ¶ 28.

The 24th floor USMS detention area was renovated in 1996. DSF ¶ 29.

### C. USMS Changes to Facilities and Policies to Accommodate Prisoners in Oversized Wheelchairs

Although it is not legally obligated to do so, USMS is voluntarily renovating holding cell number eight in the 24th floor holding area to bring it into compliance with current accessibility law. DSF ¶¶ 30–32. These renovations include: (1) replacement of the cell door, including modifications to the opening, to provide a 42" opening clearance; (2) installation of an ADA/ABA compliant toilet and sink to replace current fixtures; (3) replacement and relocation of the privacy screen to provide a 60" turning radius; and (4) installation of grab bars at the toilet. DSF ¶ 32. The cell renovation meets ADA and ABA accessibility requirements. DSF ¶ 33. USMS is in the process of negotiating a price with GSA and the contractor, and has committed to executing the cell renovation project. DSF ¶¶ 30–31.

USMS Northern District of Illinois has also established a new written protocol for the transport of prisoners in wheelchairs at the Dirksen United States federal courthouse. DSF ¶ 34. USMS presented the protocol to Judge Gettleman's building accessibility committee, which approved it. DSF ¶ 35. Chief Judge Rubén Castillo and Clerk of Court Thomas Bruton have also reviewed and approved the new protocol. Northern District of Illinois USMS personnel will use the new protocol to accommodate a prisoner in a wheelchair at the federal courthouse, and once the cell renovation on the 24th floor is complete, that portion of the protocol will go into effect. DSF ¶¶ 36–38.

### D. The Allegations of the Complaint

Payne's complaint alleges that the procedure of removing the footrests from his wheelchair to fit it into the prisoner elevator, the lack of grab bars in the 24th floor holding cell, and the lack of grab bars in the courtroom prisoner holding cell violated Section 504 of the Rehabilitation Act. Compl., ¶¶ 3–4, 7–8, 11. Payne did not file an administrative complaint with DOJ or GSA regarding his experience at the courthouse in November 2014. DSF ¶ 39.

Payne asks the court for injunctive relief in the form of "modifications that comply with the law." Compl., ¶ V ("Relief"). The court struck Payne's punitive damages request in its memorandum opinion on defendants' motion to dismiss, Dkt. 20 at 8, and determined that Payne cannot receive compensatory damages from federal agency defendants in this Rehabilitation Act case, Dkt. 66 at 2. Per this court's November 29, 2017 order, Payne may only receive injunctive relief. Dkt. 70.

## Argument

Because any relief available to Payne under the Rehabilitation Act has already been voluntarily undertaken by defendants, the court should dismiss the case. Alternatively, summary judgment should be entered for defendants because Payne failed to exhaust his administrative remedies under the Rehabilitation Act before bringing this lawsuit and because the prisoner areas in question are either being brought into compliance with the relevant accessibility laws or exempt from such compliance due to their age.

### I. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of fact exists only when a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty*

5

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court should view all the evidence in the most favorable light for the non-movant and draw all reasonable inferences in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Summary judgment is appropriate when the nonmoving party cannot "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has established that it is entitled to summary judgment, the non-movant must demonstrate, with more than mere conclusions or allegations, that a genuine factual dispute necessitates trial. *Liberty Lobby*, 477 U.S. at 247–48 (1986) ("mere existence of *some* alleged factual dispute" not enough).

**II.     Because Defendants Have Made Voluntary Changes to Facilities and Policies, this Lawsuit Is Moot.**

The court should dismiss Payne's complaint under Fed. R. Civ. P. 12(b)(1) because the case is now moot. "'A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Stotts v. Cmty. Unit Sch. Dist. No. 1*, 230 F.3d 989, 990 (7th Cir. 2000) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Defendants have voluntarily undertaken all the relief that Payne could receive under the Rehabilitation Act, therefore there is no longer a live controversy. *See Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) (case moot when public officials voluntarily ceased challenged practice and there is "no future danger" of the practice re-occurring).

Payne has asked the court for injunctive relief in the form of "modifications that comply with the law." Compl., ¶ V ("Relief"). Payne cannot receive punitive or compensatory damages for this Rehabilitation Act claim as a matter of law. Dkt. 20 (Motion to Dismiss Op.) at 8; Dkt. 66 (Motion to Reconsider Op.) at 2. All that is left for Payne is injunctive relief—and defendants have voluntarily undertaken changes to facilities and policy to better accommodate prisoners in wheelchairs.

As for facilities, USMS is renovating holding cell number eight in the 24th floor holding area to bring it into compliance with current standards. DSF ¶ 30. USMS is committed to executing the cell renovation project, which is in the price negotiation stage with USMS, GSA, and the contractor. DSF ¶¶ 30–31. The renovation design follows current ABA/ADA standards and addresses the issues specified in Payne's complaint, including grab bars, toilet fixtures, and adequate space for wheelchair turning radius. DSF ¶¶ 32–33.

USMS has also established a new written protocol for prisoners in wheelchairs at the Dirksen federal courthouse. USMS developed the new protocol in consultation with Judge Gettleman's committee that examines handicap accessibility issues in the building. DSF ¶ 35. Chief Judge Rubén Castillo and Clerk of Court Thomas Bruton have also reviewed the protocol because it concerns the movement of prisoners in secured areas of the building. Northern District of Illinois USMS personnel will use the new protocol to accommodate a prisoner in a wheelchair at the Dirksen federal courthouse, and once the cell renovation on the 24th floor is complete, that portion of the protocol will go into effect. DSF ¶¶ 36–38. Because the protocol details the movement of prisoners into and within the federal courthouse building, defendants did not attach the protocol to this public document due to security concerns. If requested by the court, defendants will submit the protocol for *in camera* review.

Because defendants have voluntarily undertaken policy and facility changes to address issues raised in the complaint, the injunctive relief Payne requested is already completed or well underway. Therefore, the case is moot and should be dismissed with prejudice.

**III. Because Payne Failed to Exhaust Required Administrative Remedies, this Lawsuit Should Be Dismissed.**

Even if his claims were not moot, Payne cannot prevail in this lawsuit because he skipped the administrative process required to bring a Rehabilitation Act claim. Section 504(a) of the

7

Rehabilitation Act provides that no disabled individual "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a). The "under any program or activity conducted by any Executive agency" language is an amendment to the statute, and Section 504(a) states that each federal agency "shall promulgate such regulations as may be necessary to carry out the amendments to this section[.]" *Id*.; Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub. L. No. 95-602, § 119, 92 Stat. 2955, 2982.

The Department of Justice, which includes the Marshals Service, subsequently created extensive compliance procedures for any allegations of disability or accessibility discrimination under Section 504, which include complaint investigation, conciliation, and appeal, with a hearing before an administrative law judge. 28 C.F.R. § 39.170; *Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 728-30 (E.D.N.C. 2013) (providing detailed history of DOJ Rehabilitation Act regulations). GSA similarly has made the requirements of Section 504 applicable to its operations through enforcement and compliance regulations that mandate investigation of complaints and eventual appeal to an administrative law judge. 41 C.F.R. §§ 105-8.101, 105-8.170.

It is undisputed that Payne did not file an administrative complaint with DOJ or GSA regarding his experience at the courthouse in November 2014. DSF ¶ 39. His failure to do so is fatal to his claim. *Crowder v. True*, 91 C 7427, 1993 WL 532455, at *5-6 (N.D. Ill. Dec. 21, 1993) (plaintiff must exhaust administrative remedies prior to filing Rehabilitation Act claim); *Arkansas Adapt v. Johnson,* 149 F.3d 1186 (8th Cir. 1998) (same). These administrative remedies were readily available to Payne, because among other things: (1) the procedures were outlined in

published regulations; (2) Payne had 180 days from the date of the alleged discrimination to file an administrative complaint (28 C.F.R. § 39.170(d)(3) and 41 C.F.R. § 105-8.170-4(c)); and (3) he could have filed an administrative complaint with either agency by mail (28 C.F.R. § 39.170(d)(1) & (4); 41 C.F.R. § 105-8.170-4(a) & (d)). Unlike in *Harper v. Dart*, No. 14 C 1237, 2015 WL 3918944, at *3 (N.D. Ill. June 24, 2015), Payne did not need to follow any particular procedure *at Cook County Jail* in order to comply with the wholly separate and publically available (in published regulations) DOJ and GSA procedures that gave him 180 days to file his complaint by mail.

Payne has no excuse for not following the required pre-filing procedures. That Payne may have not been aware of the agencies' administrative processes does not excuse his failure to exhaust. *Terrell v. Carter,* 13 C 1103, 2014 WL 6566072, at *6 (N.D. Ill. Nov. 20, 2014) (inmate's "ignorance of a procedural requirement does not excuse the requirement that he use the procedure"); *Twitty v. McCoskey*, 226 Fed. App'x 594, 596 (7th Cir. 2007) (same). And oral complaints to USMS personnel do not satisfy the exhaustion requirement or excuse Payne's failure to follow the proper procedures. *Richee v. Velasco*, 02 C 7761, 2002 WL 31749175, at *2 (N.D. Ill. Dec. 9, 2002) (explaining that prisoner's oral complaints "would not of course qualify as the exhaustion of administrative remedies").

Because Payne failed to exhaust his administrative remedies before filing suit, this case should be dismissed.

**IV. Because the Prisoner Elevators and Courtroom Holding Cells Do Not Violate the Relevant Accessibility Standards, Summary Judgment Should be Granted for Defendants.**

Payne asserts that the dedicated prisoner elevators and courtroom holding cells do not conform to applicable accessibility law, but that is not accurate. Those areas pre-date the Rehabilitation Act, have not been renovated since, and are therefore exempted.

Following the 1978 amendments to Section 504, DOJ and GSA issued regulations prohibiting disability discrimination in programs conducted by the agencies, including in existing facilities used by DOJ or GSA. 28 C.F.R. §§ 39.150, 39.151; 41 C.F.R. § 105-8.101 *et seq*. These regulations specify that existing facilities like the courthouse are subject to the accessibility requirements of the Architectural Barriers Act of 1968, 42 U.S.C. §§ 4151-4157, a statute that was enacted to insure that all public buildings constructed by the federal government are "designed and constructed in such a way that they will be accessible to and usable by the physically handicapped." *Rose v. United States Postal Serv.*, 774 F.2d 1355, 1358 (9th Cir. 1984). The Barriers Act, however, applies only to buildings that were constructed by the United States *after* September 2, 1969. 41 C.F.R. § 101-19.602(a); *see also* 42 U.S.C. § 4151. Construction on the Dirksen Federal Building was completed in 1964, DSF ¶ 25; thus, it is not subject to the accessibility requirements of the Barriers Act, unless altered.

While other parts of the courthouse may have been renovated, the courtroom holding cells have not been altered in any way since the building was completed in 1964. DSF ¶ 28. And since 1964, the components—i.e., the electronics and cab—of the dedicated prisoner elevators have been replaced, but no structural changes to the cement block elevator shafts or modifications to the size of the elevators have been undertaken. DSF ¶ 27. Absent an alteration to these areas, neither DOJ nor GSA were under an obligation to make the holding cells or elevators handicapped accessible.

28 C.F.R. § 39.151 ("Each building or part of a building that is constructed or altered by, on behalf of, or for the use of the agency shall be designed, constructed, or altered so as to be readily accessible to and usable by handicapped persons."); 41 C.F.R. § 105-8.151 (same). Because those prisoner areas do not violate the relevant accessibility laws, summary judgment for defendants is appropriate.

## Conclusion

Payne's experiences have brought attention to ways that defendants can better accommodate prisoners in oversized wheelchairs, and defendants have made changes to facilities and policies as a result. For the foregoing reasons, the court should enter summary judgment in favor of defendants and terminate the case.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Susan Willoughby Anderson
SUSAN WILLOUGHBY ANDERSON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9082
willoughby.anderson@usdoj.gov

## CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent by first-class mail on February 15, 2018, to the following non-ECF filer:

Dionell Payne
N-42723
Pinckneyville - PCC
5835 State Route 154
Pinckneyville, IL 62274

s/ Susan Willoughby Anderson
SUSAN WILLOUGHBY ANDERSON
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9082
willoughby.anderson@usdoj.gov