# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DIONELL PAYNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15 C 5970 |
| | ) |
| UNITED STATES MARSHALS SERVICE and GENERAL SERVICES ADMINISTRATION, | ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dionell Payne, a state prisoner who is paralyzed and confined to a wheelchair, has filed a *pro se* lawsuit contending that the defendants violated federal disability laws by failing to provide reasonable accommodations for him during a civil trial held at the federal courthouse in Chicago. The defendants, the United States Marshals Service (USMS) and the General Services Administration (GSA), have moved for summary judgment.

## Background

Payne is paralyzed from the neck down and uses a wheelchair. For several days in November 2014, he was transported from the Cook County jail to the federal courthouse for a civil trial that was held before the undersigned judge.[1] To appear in

---

[1] The present case was recently reassigned to the undersigned judge from the judge to whom it was originally assigned. The Court called this to the parties' attention and then

the federal courtroom, Payne had to complete a trip with multiple steps, several of which are at issue here. First, state officers transported Payne from the Cook County jail to the federal courthouse. Next, employees of USMS moved Payne into an elevator. Payne contends that the only way he could fit into the elevator cabin was to remove the leg rests on his wheelchair. He further alleges that the USMS employees "squished" him into the elevator in an uncomfortable manner. D.E. 75, Def.'s Ex. 1 at 16 (Payne Dep.).

From there, the elevator took Payne to the twenty-fourth floor of the federal courthouse, where holding cells are located. Payne contends that the accommodations provided to change into courtroom clothing were inadequate. He alleges that he was told to change himself as best he could, despite the absence of the fixtures—rails and grips that he could use to reposition himself—that disability laws require. Without these accommodations, it was an extremely difficult process to change his clothing: he alleges that, as a result of these inadequate accommodations, he fell and injured himself, causing spasms and neck pain.

Payne contends that he complained about the accommodations to a deputy U.S. Marshal and to an attorney (who may have been employed by the U.S. Attorney's Office) but was never told how to file a grievance. Payne further contends that, while he was at the courthouse, he never saw any information posted regarding a grievance procedure. He subsequently filed a grievance through the Cook County jail administrative procedures. He then filed the present *pro se* lawsuit.

This case was originally assigned to Judge Charles P. Kocoras. On initial

---

held a status hearing during which both sides consented to the undersigned judge presiding over the case.

review, Judge Kocoras found that Payne had stated a claim against USMS and the GSA under the Rehabilitation Act, 29 U.S.C. § 794.  The defendants moved to dismiss Payne's claim, arguing that he failed to exhaust administrative remedies before filing suit.  Judge Kocoras denied the motion, concluding that the defendants had failed to show Payne—who was a county prisoner, not a federal prisoner—was ever made aware of USMS or GSA procedures for filing a grievance regarding accommodations.  Next, the defendants moved to limit the relief available to Payne to injunctive relief only, relying upon *Lane v. Pena*, 518 U.S. 187 (1996), in which the Supreme Court held that Congress had not waived sovereign immunity for monetary damages for suits under the Rehabilitation Act.  *Id.* at 197.  Judge Kocoras granted the motion, leaving Payne with only a claim for injunctive relief.  The defendants have now moved for summary judgment.

## Discussion

Summary judgment is appropriate if the moving party shows it is entitled to relief as a matter of law.  Fed. R. Civ. P. 56(a); *Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018).  The defendants present three reasons for summary judgment on Payne's Rehabilitation Act claim.  Under the statute, no disabled individual, by reason of his or her disability, may "be excluded from the participation in, be denied the benefits of, or be subjected to" discrimination "under any program or activity conducted by any Executive agency."  29 U.S.C. § 794(a).

**I.    Mootness**

First, the defendants argue that summary judgment is appropriate because the "[d]efendants have voluntarily undertaken all the relief that Payne could receive under

3

the Rehabilitation Act[.]" Mem. in Supp. of Summ. J. at 6. To determine if the government's purported changes moot Payne's case, the Court asks "whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 565 (7th Cir. 1991) (quoting C. Wright, A. Miller, & E. Cooper, *Fed. Prac. & Proc.: Jurisdiction* 2d § 3533.6, at 350)). But it is "well established" that a defendant's "voluntary cessation" of allegedly illegal conduct will generally not moot the plaintiff's claim. *Ragsdale v. Turnock*, 841 F.2d 1358, 1364 (7th Cir. 1988).

The defendants point to two major changes in accommodations for disabled prisoners. First, the defendants note that the USMS adopted a new protocol to accommodate the transport of prisoners in wheelchairs. The defendants do not explain, however, how the new protocol would avoid the failures that Payne alleges. Second, the defendants present a shifting story regarding renovations to the twenty-fourth floor. The defendants first stated they were in the process of negotiating a contract to renovate the particular holding cell that Payne challenged. The renovations would include "(1) replacement of the cell door, including modifications to the opening, to provide a 42" opening clearance; (2) installation of an ADA/ABA complaint toilet and sink to replace current fixtures; (3) replacement and relocation of the privacy screen to provide a 60" turning radius; and (4) installation of grab doors at the toilet." Defs.' LR 56.1 Stmt. of Facts ¶ 32. In a later filing, however, the defendants stated that the *entire* twenty-fourth floor is to be renovated in a project that is anticipated to conclude in two to three years. Supp. to Defs.' LR 56.1 Stmt. of Facts ¶¶ 42, 45. The supplemental filing

does not provide comparable details on what will be changed in the renovated cells.

None of these changes or anticipated changes renders Payne's claim moot. The Court first notes that the defendants have failed to explain in any detail how the changes address the particular shortcomings that Payne has identified. Moreover, the record suggests that none of the changes has yet been instituted: the new protocol has not yet been applied to any prisoners, and the proposed renovations of the holding cell are at least two years from completion. Thus the defendants' evidence falls far short of demonstrating "complete discontinuance" of the practices at issue. The defendants are not entitled to summary judgment on mootness grounds.

**II.	Failure to exhaust**

Second, the defendants argue that summary judgment is warranted because Payne failed to exhaust the administrative remedies that the USMS and GSA provide for claims under the Rehabilitation Act. Because Payne is currently imprisoned, the Prison Reform Litigation Act (PRLA) precludes him from bringing a federal claim "until such administrative remedies as available are exhausted." 42 U.S.C. § 1997e(a). "Exhaustion is an affirmative defense with the burden of proof on the defendants." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011).

District courts are split on whether the Rehabilitation Act itself requires exhaustion of administrative remedies. *Compare Cooke v. U.S. Bureau of Prisons*, 926 F. Supp. 2d 720, 734-35 (E.D.N.C. 2013) (dismissing Rehabilitation Act claim for failure to exhaust administrative remedies), *with Hewitt v. U.S. Office of Personnel Mgmt.*, 390 F. Supp. 2d 685, 690 (N.D. Ill. Mar. 11, 2005) ("Cases . . . based on § 504 . . . of the Rehabilitation Act may proceed directly to court, free of any requirement to exhaust

5

administrative review.")  In a prior holding, Judge Kocoras declined to hold that the Rehabilitation Act required plaintiffs to exhaust administrative remedies, finding that the PLRA alone imposed an exhaustion requirement on Payne.  And, at the motion to dismiss stage, Judge Kocoras found that the pleadings did not indicate that Payne had notice of the available GSA or Department of Justice (DOJ) remedies, so he declined to dismiss Payne's claim on exhaustion grounds.  D.E. 20 at 4 (June 17, 2016 Mem. Op.).  Now that discovery has closed, defendants have essentially renewed their earlier contention.  Thus the motion for summary judgment presents the following question to the Court:  whether, under the PLRA, Payne obtained notice of the available remedies and, if so, whether his failure to exhaust those remedies precludes his Rehabilitation Act claim.

"Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about.  They are not required to divine the availability of other procedures."  *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (citation omitted).  The defendants suggest that Payne was notified because the government has published the regulations that define the administrative remedies in question.  But Payne is only required to exercise "reasonable diligence" in attempting to exhaust his remedies, which he satisfied by inquiring into remedies with multiple individuals during the brief period he was at the federal courthouse and by attempting to file a grievance with the Cook County jail.  *Hudson v. Corizon Med. Servs.*, 556 F. App'x 573, 575 (7th Cir. 2014).  He did not need to scour the Code of Federal Regulations.  Without any notice of the remedies, Payne cannot be held responsible for failing to avail himself of the procedures, given the steps he already took.  *King*, 781 F.3d at 896;

*Harper v. Dart*, No. 14 C 1237, 2015 WL 3918944 (N.D. Ill. June 24, 2015) ("only reasonably publicized procedures must be exhausted"). Indeed, Payne contrasts his experience at the Cook County jail, in which the administrators made grievance procedures readily available to prisoners, with that at the federal courthouse, in which he was not given a rulebook or any other notice of available remedies. Pl.'s Reply to Def. Mot. in Supp. of Summ. J. at 2-3.

The government relies on a handful of cases that hold that a plaintiff's failure to exhaust administrative remedies is fatal to a Rehabilitation Act claim. But each of these cases locates the exhaustion requirement in the Rehabilitation Act itself rather than in the PLRA. Judge Kocoras has already rejected this reading of the Rehabilitation Act, and in any event the Court does not find the defendants' reliance on these cases persuasive. *Ark. Adapt v. Johnson*, 149 F.3d 1186, 1186 (8th Cir. 1998); *Cooke*, 926 F. Supp. 2d at 728-30; *Crowder v. True*, No. 91 C 7427, 1993 WL 532455, at *5-6 (N.D. Ill. Dec. 21, 1993).

The Court likewise finds unpersuasive another string of cases the defendants rely upon. These cases address whether a prisoner's subjective ignorance of a procedural requirement excuses an exhaustion requirement. *See Terrell v. Carter*, No. 13 C 1103, 2014 WL 6566072, at *6 (N.D. Ill. Nov. 20, 2014); *Twitty v. McCoskey*, 226 F. App'x 594, 596 (7th Cir. 2007). But these cases are distinguishable, because Payne is not simply arguing that he was subjectively ignorant of remedies of which he had been notified. Rather, as in *King*, Payne is arguing that the defendants provided no information about the available remedies. *King*, 781 F.3d at 896 ("If authorities could . . . simply keep prisoners in the dark about the real rules, they could always defeat

prisoner suits . . . ."). A prisoner can only be responsible for exhausting the steps that the agency actually "holds out." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Because the defendants have offered no evidence that the administrative remedies at issue were reasonably available to Payne, their exhaustion defense lacks merit.[2]

## III. Rehabilitation Act

Finally, the defendants contend they are entitled to summary judgment because the areas within the federal courthouse at issue in Payne's complaint (the elevator and the holding cell) are not covered by the Rehabilitation Act. Underlying the defendants' contention is the definition of a "building" that is covered by the Rehabilitation Act. Under 41 C.F.R. § 101-19.602(a)(1), a building qualifies if, in relevant part, it "is to be constructed or altered by, or on behalf of, the United States after September 2, 1969." *Id.* The defendants contend that the Dirksen federal courthouse was built before September 2, 1969 and that the relevant areas have not been altered since. The defendants conclude Payne cannot show that the courthouse was a covered "building."

The Court overrules the unlikely theory that a federal courthouse is not a "building" covered by federal accessibility laws for two reasons. First, the question before the Court is whether the federal courthouse is a "building" for purposes of the accessibility laws, not whether a specific area—the elevator or the holding cell—is a "building." If Congress or the agencies intended to limit the application of accessibility laws to particular areas *within* federal buildings, then the language of the regulation

---

[2] The government also argues that Payne's oral complaints to USMS employees did not exhaust his administrative remedies. Because the Court finds that Payne was never notified of the claimed remedies and thus has no obligation to exhaust them, the Court does not resolve whether the steps Payne took exhausted these procedures.

8

would reflect that determination. But the law applies accessibility requirements building by building, not room by room or elevator by elevator. Because the inquiry is into whether the federal courthouse is a *building* that has been altered by the government since September 2, 1969—and the defendants concede that it has—the Court finds that both the elevator and the holding cell are covered under section 101-19.602(a)(1).

Moreover, the defendant's narrow definition of what constitutes a "building" is at odds with regulations promulgated by the DOJ (on behalf of the USMS) in 1984 and the GSA in 1991. 28 C.F.R. § 39.150; 41 C.F.R. § 105-8.150-3. Both regulations instructed that all buildings used on behalf of the agency should comply with accessibility obligations "as expeditiously as possible." *Id.* A definition of a "building" that opens up a building to the accessibility laws bit by bit, only once the federal government has altered that particular part of the building, would be at odds with these regulations. Finally, the Court notes that the defendants have cited no decisions by other courts adopting this reading of the accessibility laws.

For these reasons, the Court declines to grant the defendants' motion for summary judgment on this ground.

## Conclusion

For the foregoing reasons, the Court denies the defendants' motion for summary judgment [dkt. no. 73] and strikes their exhaustion defense due to its lack of merit. The case is set for a status hearing on August 16, 2018 at 8:45 a.m. Defense counsel are to make arrangements for plaintiff to participate by telephone.

Date: July 20, 2018

_____
MATTHEW F. KENNELLY
United States District Judge